**FOGELSON et al. v. AMERICAN WOOLEN CO., Inc., et al.**

District Court, S. D. New York.
June 3, 1948.

292

Schwartz & Frohlich, of New York City, for plaintiffs.

Patterson, Belknap & Webb and Hays, Wolf, Schwabacher, Sklar & Epstein, all of New York City, for defendant American Woolen Company, Inc.

HULBERT, District Judge.

The corporate defendant brought on this motion for summary judgment.

Plaintiffs, both residents of this District, are two stockholders of the defendant corporation, owning, respectively, 200 and 150 shares of its common stock.

The American Woolen Company is a Massachusetts corporation authorized to do business in the State of New York, and the individual defendants are among its directors, all of whom are residents of Massachusetts.

This action was commenced on the 4th day of March, 1948, to enjoin and restrain the defendants from setting up a retirement income plan, and, in the event that any moneys shall have been or shall be paid into the trust for a decree surcharging the individual defendants with such payment and compelling the restoration thereof.

The issue presented to the court is whether, and if so, to what extent, the court may review the acts and limit the powers of a board of directors of a corporation, especially when their action has been submitted to and passed upon by the stockholders at a duly called meeting.

Some time prior to February 20, 1948, the corporate defendant promulgated a plan for the purpose of paying to all of its salaried employees, tentatively effective January 1, 1948, annual sums of money based upon the length of service of all such employees upon their retirement, respectively, from the employ of the corporate defendant.

The challenged plan is to be administered by means of a pension trust, of which the Guaranty Trust Company of New York is the designated trustee. The plan proposes that the corporation shall pay into that trust $4,657,202 to fund that part of the pensions based on the past services of approximately 1,000 employees *and including eight officers* of whom two, the President and Clerk (the latter performing services corresponding to Secretary) are directors, will become participants.

The defendants represent that the determination to set up a Retirement Income Plan was conceived for the purpose of improving efficiency and morale, by providing a means of removing over-age employees, assuring a measure of old age security for employees, enhancing the chances of promotion of younger employees, and attracting a high grade of personnel to the employ of the company.

The plaintiffs are not opposed, in principle, to a Retirement Plan for the employees of the defendant corporation, but contend that the Plan now before this court is unsound, and allege, inter alia the following objections:

(1) The payment of the full amount to fund past services, instead of in installments over a period of years, with a right at any time to cease the making of installment payments should the same become desirable and necessary because of any change in the financial position of the defendant corporation;

(2) The failure to fix a reasonable ceiling limiting the maximum amount of pension payable annually to any individual entitled to a pension under the Plan; and

(3) The unconscionable and excessive amount to be paid under the Plan to Moses Pendleton, the corporate defendant's President, would constitute waste of the assets of the defendant corporation.

They further allege that the defendant corporation, while having very substantial

assets, does not have adequate cash on hand to finance the Plan; that it borrowed from banks in 1947 approximately $10,000,000, which is unpaid and still owing; that the Plan does not take into account the cost of financing with respect to future services of the employees; that a lump sum payment by the corporate defendant to fund past service benefits cannot be wholly deducted in the year when paid out, but is deductible only in part each year over a period of years under the alternative methods set forth in the Tax Law; that it does not accord with the custom and practices of other comparable corporations' Retirement Income Plans; and that it disregards the inflationary period now existing and the past history of the defendant corporation.

Defendant American Woolen Company, is said to be the largest producer of woolen cloth in the United States, and is a well-known and prosperous business corporation, earning substantial profits, paying good dividends and possessed of a large earned surplus.

It paid dividends on its common stock of $12 a share for 1946, and its income for 1947 was sufficient to enable it to pay the dividends on its preferred stock, $10 per share on its common stock, and set aside the entire amount of $4,657,292 to fund liability for past services under the Plan and add to the company's reserve and to its growing earned surplus, which, at the end of 1947, exceeded $17,000,000. Its profits for the first quarter of 1948 exceeded those for the same period of 1947, and sales and unfilled orders as of the end of the first quarter of 1948 were substantially in excess of those for the same period of 1947.

However, plaintiffs further allege that the defendants, (a) in wilful disregard of the best interest of the corporate defendant, propose to deplete its cash and working capital, (b) that the individual defendants herein have conspired among themselves for the purpose of assisting Pendleton in creating this proposed Retirement Income Plan to give him a preference over all stockholders and future creditors of the corporation.

In addition to considering the features of various Plans adopted by other corporations, it appears that the directors of the defendant corporation engaged the services of Johnson & Higgins, a firm well known in the insurance field in the City of New York, to advise and otherwise assist in the study and formulation of a Retirement Income Plan. Mortimer M. Denker, manager of the Group Life and Pension Department of that firm, states, in an affidavit supporting the motion:

"That the present trend of corporate pension plans was and is away from the fixing of low maximums on retirement incomes. The use of a percentage formula such as that in the American's (sic) plan effectively limits individual pensions to a percentage of salary, and such practice permits "retirement of over-age executives, without requiring them to give up more than a fixed percentage of the salary they would have earned had they remained with the corporation, and without due hardship under the conditions of high taxes and living costs, and is calculated best to serve the purpose of attracting the ablest available men for key positions. The percentage benefit formula employed by the American Woolen Company's plan is characteristic of the formula employed in corporate pension plans."

Mr. Denker then cites such corporations as United States Steel Corporation, Texas Company, Westinghouse Air Brake Co., American Telephone & Telegraph Company, Bethlehem Steel Corporation, American Can Company, Radio Corporation of America, and General Electric Company, under whose plans the operation of the percentage formula results in retirement income for particular individuals in excess of $50,000 a year.

Plaintiffs complain that President Pendleton received a salary in 1947 of $151,250, and under the proposed Plan, upon normal retirement at the age of 65 years on June 1, 1949, would be entitled to a pension of $54,220. He has been employed by the defendant for 45 years but his allotment is figured upon a maximum of 30 years; therefore, he does not gain the advantage of his additional service of 15 years.

The plaintiffs do not submit a challenge to Mr. Denker's analysis, and opinions based thereon, by any recognized authority in his field, but in a replying affidavit of one of the plaintiffs' attorneys, it is stated:

"It is our position that a percentage basis may be used, but there must be a reasonable dollar limit beyond which the pension cannot go."

This, naturally, suggests the query: Who is to determine that limit? In the first instance, it must be the directors, but their action can only be reviewed in accordance with a well established principle which has been enunciated by judicial fiat. Mr. Frohlich then states:

"Mr. Denker's affidavit is deceptive and incorrect. With respect to a number of the companies mentioned by him, as to which he arrives at large percentages, the plans are contributory, that is to say, the employee makes a contribution to the pension out of his salary."

But no facts are stated to support such conclusion to aid the court in weighing the effectiveness of that argument.

He then continues:

"We have been unable to check all of the companies referred to by Mr. Denker. There are some, however, concerning which we have information" (which he enumerates).

Again, the source and particulars are not stated.

Mr. Denker further points out that the cost to the company of the funding by a single payment would be $4,657,292. The alternative method suggested by the plaintiffs over a period of years on the basis, for example, 10% thereof annually, would be approximately $600,000 more, and the corpus of the fund would earn interest which would be wholly tax exempt and freed from a tax burden of some 38%. Mr. Frohlich asserts that the five companies set forth by Mr. Denker as having funded pensions in a single payment are completely unfair examples.

The United States Commissioner of Internal Revenue, approved the Plan in a letter dated January 26, 1948, in which he stated that in the opinion of the Treasury Department it complied with section 165(a) of the United States Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 165(a), which requires that a Plan shall "not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees."

Very significant is the fact that at the annual meeting of stockholders on March 23, 1948, upon notice to each stockholder to whom was also mailed a copy of the Plan and a proxy statement as required by the rules of the Securities and Exchange Commission, describing in detail the cost of the Plan, the method of its funding, the formula of computing benefits payable thereunder, and the amounts to become due to certain officers, including Mr. Pendleton, the President, in the event of their retirement at the normal age of retirement, and a form of proxy providing blanks for or against the Plan, and a statement at the meeting of the pendency of this action, the Plan was adopted by a vote of 652,130 shares in favor as against 161,579 shares opposed and 67,407 shares not voting.

■ In Greene County Nat. Farm Loan Ass'n v. Federal Land Bank of Louisville et al., 57 F.Supp. 783, 790, affirmed, 6 Cir., 152 F.2d 215, District Judge Miller (now a member of the C.C.A. 6th Cir.), said:

"It is only in exceptional cases that the Court will interfere with the discretionary internal management of corporations. (citing cases) It is well established that the courts will not interfere with the discretion of a board of directors in exercising its legal powers by acting within the limits of its charter, and without fraud, actual or constructive, upon the stockholders, regardless of motives. (Citing cases)"

■ In my considered opinion, there are no facts supporting the allegations of conspiracy, wilful neglect of duty, bad faith or overreaching by the directors and no colorable reason to disturb the exercise by the directors of their judgment and discretion in the discharge of their duties, and, therefore, no triable issue.

Motion granted.